The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention so the Court is not sitting. God save the United States and this Honorable Court. May it please the Court, Rami Krishnan on behalf of Appellant, the National Association of Immigration Judges. This case is about a sweeping prior restraint on the speech of federal immigration judges. For over two years now, the agency has banned judges from speaking as private citizens about immigration law or policy or about the court system they administer. On all other topics, judges have been required to submit to an onerous preapproval process. These restrictions are- I'll just interrupt you, just to cut to the quick a little bit. This is a preliminary injunction, it's an interlocutory injunction and the motion is pending and the district court ruled on one basis, that is that this was a collective bargaining unit and under the statute, it didn't have jurisdiction. Now, we have the ruling of the agency that the immigration judges are not part of a collective bargaining. So, that turns out to be error. That's all that's before us. Shouldn't we just simply vacate the order and send it back and let the case proceed as the judge wants? It's an open motion. No, because the FLRA's decision doesn't actually change the status quo. NAJ continues to be a certified bargaining representative unless- I know, but they may be a representative, but they're not within that statute, are they? They currently continue to be within the bounds of the statute because they retain their certification until the regional director revokes that certification and that's something that hasn't- They've never been decertified as a collective bargaining representative, isn't that correct? That's correct. Under the statute and under the regulations, they would have to be decertified by the regional director. That's correct, Your Honor. And the regional director has not moved to decertify them. So, they're still a collective bargaining representative. Exactly, and it would be futile to remand while NAJ remains a certified bargaining representative because we already know the district court's views on jurisdiction in that event. But the problem I have is if they have not been decertified, and I don't think that I can assume that the current administration is going to move to decertify them, but if they remain as the collective bargaining representative and they have not been decertified, then why wouldn't they be required? Why wasn't the district judge ruling correct in requiring that the steps that Congress has laid out so carefully be followed? Now, if the day comes that they are decertified, then that's a different question, but that hasn't happened yet. And my question is, if they continue to be the collective bargaining representative because the regional director has not acted, why wouldn't Congress has laid out this very careful scheme under the statute? And why wouldn't you be trying just to circumvent that whole scheme and bring this issue up to us when the FLRA has not even ruled? That's because the district court's jurisdictional holding turned essentially on a finding that NAHA could obtain meaningful judicial review through the scheme by initiating collective bargaining over the policy in the same way it did in 2018. But in 2018, NAHA bargained over the policy's implementation, not substance. And that difference is important because it's the difference between being able to obtain meaningful judicial review or not under this. I don't understand why you wouldn't be able to obtain meaningful judicial review because these issues that you raise are the subject of collective bargaining all the time. And the issues you raised about the official speech and personal speech and the degree of supervision and everything, those have been the subjects of collective bargaining. And in fact, the rules have been relaxed through the collective bargaining process. So I don't understand the idea that you can't achieve meaningful relief through the collective bargaining process when there's collective bargaining over these various sorts of issues all the time. I mean, my basic question is the threshold one. And that is, if these issues are subject to collective bargaining, and if the union has not been decertified as the collective bargaining representative, why wasn't the district court correct in saying that Congress has laid out a very careful scheme? It's hard to follow. It's so intricate. But the scheme basically goes from the collective bargaining table to the FLRA and then to the Court of Appeals. And that whole scheme has been bypassed. Respectfully, it hasn't, Your Honor. Again, this comes down to the distinction between implementation and substance. And let me explain why that distinction is important. The agency is statutorily prohibited from bargaining over the policy substance because the policy involves the exercise of a reserved management right. NAJ knows this, and the government doesn't dispute this. That means that any demand to bargain over the policy substance would be a knowingly frivolous demand, as would any unfair labor practice or negotiability dispute that resulted from the agency's inevitable refusal to bargain. Meanwhile, demanding to bargain over the policy's implementation wouldn't lead to any judicial review at all. The agency would be statutorily bound. How do we know this until we at least try to get some input from the agency that Congress has, from the collective bargaining process and from the agency that Congress has charged to deal with these questions? I mean, you may be right, you may not be right as to whether these issues are negotiable or whether they're not, or what's the subject of a grievance and what is not. But there are several preliminary questions. There's this, and then there's the mootness point, and the rest. And I don't understand why the district court wasn't correct, and that is that Congress has laid forth a very careful scheme for dealing with all these questions, and we're not entitled to just toss it overboard. Respectfully, we already know that the agency doesn't dispute the policy's implementation because it bargained over the policy's implementation in 2018. And bargaining over the policy's implementation wouldn't lead to judicial review, because again, the agency would agree to bargain. And no matter how negotiations proceeded, NAJ couldn't get judicial review whether the agency accepted or rejected NAJ's implementation proposals. If the agency rejected NAJ's implementation proposals and the parties reached an impasse, that impasse wouldn't be judicially reviewable, because contrary to the district court's decision, an impasse is not an unfair labor practice. And while the parties can refer an impasse— which is that you're not going to get judicial review, you will get judicial review if you follow the scheme Congress has laid out. And you'll go to the FLRA, and then from there, all of these roads seem to lead to the Court of Appeals. But I'm not sure we're entitled to do all of this in the first instance. Now, if the National Association is decertified, that puts a different complexion on things, but it hasn't been. And even if you are correct on that, you still face a significant mootness problem, don't you? No. Well, so let me respond to both of those concerns, starting with mootness. The agency's new policy doesn't address any of the central constitutional defects of the previous policy. And as this Court held in Green v. City of Raleigh, when a challenge policy is repealed or revised mid-lawsuit, that doesn't render the case moot if a substantially similar policy has been instituted. And that is what has happened here. The new policy imposes a prior restraint in almost exactly the same way as the previous one. The district court hasn't—you know, this is a matter of burdens and benefits. And the district court never had a chance to weigh burdens and benefits under the 2021 policy change. And I don't understand why the 2021 policy change didn't change the 2020 policy change in some crucial respects, including, as I understand it, eliminating the provision for supervisory prior approval for personal capacity speech. And it loosened it for official capacity speech as well. Those, strike me, is very different, is very substantial changes. And when you're dealing with a First Amendment claim, it's often a question of weighing the burden of burdens upon speech or with the benefits that the state asserts as part of its interest. And the district court never even had a chance to do that under the 2021 policy. So two points. First, it would be futile to remand to the district court for consideration of the details of the new policy because the new policy will have no bearing at all on the jurisdictional question that the district court considered to be determinative. That is, whether district court jurisdiction is precluded over NAJ's prior restraint challenge. The district court's analysis there turned not on the text of the challenge policy, but on the statutory scheme. And so if this court were to remand without addressing the district court's error, the district court would simply reenter its ruling. But to your point about the whether there is any meaningful gap between the previous policy and the new one, the new one retains the central defect of the previous policy, which is the imposition of a categorical prohibition on judges speaking in their private capacities about immigration law or policy issues or about agency programs and policies. And at the same time, while it's true the policy purports to eliminate a pre-approval requirement for personal capacity speech unrelated to an employee's official duties, it contains broad exceptions that effectively swallow this rule. So the central defects of the previous policy remain intact. Well, these are questions you keep speaking in terms of in categorical terms and say, well, anything that imposes any kind of prior restraint is categorically wrong. But I don't understand, given the fact that in the Department of Defense and the Department of Justice and within the judicial branch, there are all kinds of questions of prior approval and things where which public employees can do other things which they may not be able to do. And given the prevalence of these sorts of supervisory reviews throughout the federal government, why aren't these questions of degree rather than questions? This is categorically wrong. This is categorically this. Your view is that any supervisory review is categorically offensive to the First Amendment. But it seems to me that these questions are matters of degree throughout the federal government. And if they are matters of degree, then they come down to matters of burden and benefit. So the district court should, at a minimum, have a chance to take a first crack at that and develop a record as to that. I mean, I think these sweeping statements you're making about categorical prior restraints, I would throw out a whole lot, I would throw out most of the Hatch Act. It would throw out preclearance review in the Department of State and the Department of Defense. I mean, what you're asking for is a whole lot. And particularly. It's difficult to see how you get here until the union has been decertified and it hasn't been decertified. So two points, Your Honor. First, and this is a point I made earlier, but it would be futile to remount to the district court as long as NAJ remains a certified bargaining representative and it continues to retain that status. So there's no question of the district court getting to benefits and burdens while that remains the case. But secondly, we don't argue that any prior restraint is categorically unconstitutional. Opposition is simply that any prior restraint, and as Your Honor noted in a case called Liverman, would be subject to stringent scrutiny under NTU and the policies restrictions here can't satisfy that exacting standard. In the first instance, the government hasn't been able to show that the restrained speech causes any actual harm to its relied upon interests. It points to its interests in promoting ethics compliance and in avoiding disruptive speech. But as Your Honor noted in Liverman, generalized assertions of harm are insufficient. The government needs to be able to point to evidence. You didn't deal with the federal employee speech, which strikes me as very different from a sort of municipality 1983 issue. But I don't mean to interrupt you, but the way in which this is being projected to me, I can't keep track of the time. So I'm going to ask the courtroom deputy to let me know when the when the time when your time is expired. I just don't have a clock in front of me. So while you still have a few seconds, I want to ask to go back to something that I couldn't really find in the briefs. I understand the government doesn't dispute that you couldn't bargain over this. But I will confess that when I read the statute, I don't understand why that is. I don't see how this is a matter of discipline, saying what people can do in their personal capacities, how that's a matter. Do you have any authority? I mean, other than the text of the statute, which I think is at best unclear, that supports your argument that this would be categorically not covered by bargaining? Yes, I do. I just note that my time is expired. Can I get a short extension to answer? Yes, you can. You have additional time to answer any questions that Judge Harden's may have. Thank you. Your Honor, I can point to the Fourth Circuit's decision in Nuclear Regulatory Commission. It's a case that we cite in our briefs, which says that bargaining over a policy substance, when that policy involves the exercise of a management right, like the right to direct employees, is categorically a prohibited subject of bargaining. I guess I'm aware of that case. But when I hear the words things like direct employees, that to me covers things like what time my law clerks have to come to work and what they have to wear and what order they should do their assignments in. That doesn't strike me as covering my ability to dictate their ability to speak as private citizens away from the workplace. At least it's not obvious to me that it covers that. So what authority do you have for the view that direct employees includes the ability to prohibit them from doing things on their own time? It is established FLRA precedent that says that directing employees includes the right to supervise employees, and that has been interpreted broadly. And I'll note that our reading of the statute here has been endorsed by a bevy of labor law scholars and experts, including two former general counsels of the FLRA, as well as a former member of the Federal Service Impasses Panel. And all of them agree that any proposal going to the policy substance here is not negotiable. That is, the agency would be statutorily prohibited from bargaining over it. Well, you say so. I'm not at all sure that's correct. And that's why I want more input from those that deal with this on a regular basis. But at any rate, Judge Heitens, I want to make sure you have a chance to ask whatever questions you may have. Do you have any further questions you'd like to pose? Thank you. I just had one, and that's about your Fifth Amendment claim, which we haven't really talked about. But I guess I understand your argument that your First Amendment claim is about the substance, not the implementation. Could you just try to explain to me how your Fifth Amendment claim is about the substance rather than the implementation? Yes, because our Fifth Amendment claim essentially boils down to the failure of the policy to meaningfully cabin the discretion of the agency in approving or denying requests by judges to engage in speech. So we point to two defects here. First, the failure of the policy to cabin supervises discretion at all. Their discretion is entirely unlimited. And secondly, the discretion given to the speaking engagement team to review all speaking requests, the consistency with the agency's communications and any complaint about the criteria, basically, on which the agency makes decisions about whether to grant approval to speak is a matter that goes to the policy substance. Thank you, Judge Wilkinson. I don't have anything else. All right. Well, let's let's hear from Ms. Utrecht. Morning, Your Honor. Jennifer Utrecht on behalf of the Ohio Army, at least the court. Your Honor, a lot has changed over the course of the past year while this appeal was pending. Namely, we now have, as of last Friday, a denial by the FLRA of the union's motion for reconsideration of the order, finding that immigration judges are managerial employees. The decision issued last Friday also notes, among other things, that according to the majority, the regional director should have already decertified or rather clarified the bargaining unit per the regulations and that the FLRA was not certain why that hadn't happened yet. And so that is one of the many things that has changed. The second thing that has changed is that this is an interlocutory appeal from the denial of a preliminary injunction involving a policy that has now been canceled and superseded by a new policy. We think that the the dramatic dramatically changed circumstances of this case warrant either a dismissal for mootness or at the very least an affirmance and a remand to the district court. If the union would like to bring their new challenge to the 2021 policy, there are threshold factual jurisdictional questions that can be raised there on the basis of an appropriately developed factual record. Can I ask you a question? Do you understand the district court's injunction to be dismissal of the entire case or just denial of the injunction request? Your Honor, it was just a denial of the injunction request. I believe the case still there was never a motion to dismiss. There was never an order to dismiss this case in the district court. Let me ask you this. If the district court concludes that it couldn't enter the preliminary injunction because it didn't have jurisdiction over these issues between an employer and an employee. Would it be inconsistent for the court to continue with the case after making that finding? There are a number of things that could happen, Your Honor, that would permit the union to potentially continue their case here. One is they could amend their complaints to note that there's a new policy that was developed during a time where the union status as the certified... I know, but I'm getting back to the jurisdictional question because the district court apparently concluded that he's out of the loop as a district court. Under the scheme of things, it goes to the agency and then the circuit courts. Isn't that what he concluded? That's correct, Your Honor. Okay, so he concludes that in denying a preliminary injunction. But my question is, isn't that tantamount to saying he has no power to act further? That is tantamount to saying that with respect to, well, two responses, Your Honor. Of course, the standard under a preliminary injunction is only likelihood of success on the merits. And there are circumstances where someone could find that, you know, it was unlikely on the merits, but maybe change their mind later. But more importantly, Your Honor, again, the district court was only addressing its jurisdiction with respect to the union's challenge to the 2020 policy and the factual circumstances that existed at the time this case was filed and at the time the motion for preliminary... It's pathetic, the notion that preliminary injunctions are only that. Preliminary injunctions, they're interlocutory. The case goes on normally. But in this particular preliminary injunction motion, the court basically said, didn't go to the merits of whether the exercise of discretion to enter the injunction or not. The court said, I don't have the power to consider it. Isn't that what the court said? That is, Your Honor. And I imagine that if this court were to dismiss the appeal and this were sent back to the district court, the district court would enter in order to dismiss unless the union were to say there have been significantly changed circumstances. Well, my question is more fundamental. Where does the district court get the power to do that? If we were to send it back, the only way we could send it back and say the district court was wrong on its jurisdictional issue. It seems to me that when the court once says, I don't have the power to enter the preliminary injunction, if we affirm, we have to direct the district court to dismiss the case. I don't see how we get to any other issue when we're talking about subject matter jurisdiction. Well, Your Honor, we believe the most efficient way to resolve this appeal is for this court to dismiss this appeal as moot. The problem with mootness, that raises all kinds of sophisticated questions about the doctrine of mootness. And it seems to me when you're talking about being in equity and on a preliminary injunction, which is temporary in the case, if everything changes, you can send things back simply because you now have a totally different operational record. And the injunction, the denial of the injunction was against a circumstance that existed earlier and it no longer exists. But my questions are much more fundamental than that. My question goes to the application of the statute. And I'm wondering if the court properly exercised the statute and we were to conclude that, shouldn't we then just basically dismiss the case altogether? Your Honor, if this court were to conclude that the district court was correct on its holding as to the 2020 policy, and that is our position. Oh, it didn't say it's a policy, it said as to bargaining. Correct. I'm sorry, Your Honor, I was speaking more colloquial than I should. The district holding, of course, was about channeling. We believe the district court's holding with respect to channeling of any challenges the union had to the 2020 policy was correct. And any intervening events that happened after, the union has argued at this point that the changes between the FLRA's decision support their argument that the district court was incorrect. But it would be extremely unusual for a court of appeals to hold affirmatively that an injunction should be granted based on circumstances that were not before the district court at the time. But with respect to the channeling argument, of course, this court can affirm and simply say, yes. When you say channeling argument, you're talking about the jurisdictional argument? Yes, Your Honor. I mean, conceptually, the district court concluded it was out of the loop based on congressional establishment of jurisdiction. We have a lot of circumstances where district courts are not empowered to hear matters. They have to come to the circuit court first from an agency. And this is the one that the district court said, I can't handle this preliminary injunction because I'm out of the loop. Congress created the adjudication of these issues before the agency. And then it goes from there, not to the district court, but to the courts of appeals. And it seems to me if that conclusion is correct, we're not reviewing a preliminary injunction under the standards of winter and all those things. We're focusing really on a 12B1 type of conclusion because the court said I don't have jurisdiction, right? As a practical matter, Your Honor, the analysis does seem similar. But formally, this is an interlocutory appeal from the denial of preliminary injunction. There has not been a motion to dismiss and there has not been a formal dismissal. Judge, is Judge Niemeyer correct on that? I mean, the question I have is I don't believe that the National Association of Immigration Judges has been decertified formally. That has to be done by the regional director. Now, if it has not, if the union has not been decertified as a bargaining representative, then isn't the matter essentially under the scheme that Congress has set forth with the collective bargaining, then to the FLRA and then to the court of appeals. That's the orderly way and the presumptive way to handle these cases. And the district court says I'm not going to handle, I'm not going to throw all that overboard. Now, it may have been incorrect if the union had been decertified formally, but we've received no word as to that. And so, as I understand it, you haven't changed your position that the district court was out of the loop. Yes. So, Your Honor, we have not changed our position. And I suppose the reason that I am being perhaps more conservative than I should is because there is, there has been over the course of the past year, substantial dispute about what the effect of the FLRA's decision in November of last year was on the union status. We have reached a settlement agreement with the union that we will continue to treat them as a union until the regional director issues this order. Now, of course, now that the FLRA has issued their denial of reconsideration, it should be a ministerial matter for the regional director to do so.  But yes, Your Honor, as of this moment, the union, you know, according to our settlement agreements, is still being treated as a union. It's the requirement. Ultra virus. That's basically the, I mean, that agency opinion was very strong. I mean, it was very critical of both the Justice Department and the regional director and maybe properly so. But at this point, it goes to power. And you keep wanting us to send it back to let them consider the new circumstances or whatever. But the court didn't consider circumstances. Court said ab initio. I don't have the power. I'm out of the loop. And so it has, if it's correct, if it's correct, then we have no power to tell it it has power unless we conclude it erred. Isn't that right? I don't think that's well, Your Honor. Maybe I should try to break it out this way. Because this is an interlocutory appeal, because this was dealt with. What does that got to do with the price of fish? I mean, the fact that it's interlocutory, if the court says in the interlocutory order, I don't have the judicial power to act. I don't care whether it's a motion to dismiss an injunction or discovery motion. If the court says, I can't rule on this discovery motion because I don't have the power. And I think I'm sorry, I want to take a step backwards. I think we might be talking about two different things, because I agree with you that there is no power for the district court to hear Nage's challenge to the 2020 policy for all of the reasons that were addressed by the district court in its denial of the preliminary injunction. Except the court didn't decide it on the fact that it's a new factual circumstance. No, no, Your Honor. The court decided on the fact that there was a statute. Yes, yes, Your Honor. Absolutely. That cut the district court out of the loop. You're 100% in agreement. Because the district court found that Nage's challenge to the 2020 policy had to go through the bargaining process, go through the FLRA and go to this court. The district court did not have jurisdiction over that and this court absolutely could affirm and direct the court to dismiss. What I'm talking about with respect to, if we can call it a remand, if we can call it a new dispute, is the fact that the union here and this appeal has tried to change this interlocutory appeal from the denial of that preliminary injunction into a request for this court to enjoin a new policy. That's very persuasive if we got to it. I mean, my own tentative view coming into this oral argument was there are so many factors that have changed that the preliminary injunction is basically irrelevant. The motion, you'd have to re-argue the motion on the new facts. Right. I mean, you had five policies from 2011 up to 2020 and you had a settlement and you had, I mean, all these facts are fluid. It's like a river, you know, if you're trying to stop a particular bubble, you can't do that. Yes, Your Honor. But my questions were more fundamental. Right. Because I happen to agree with you that if we have a preliminary injunction that was entered under circumstances that no longer exist, people tend to argue it's a mootness question. But the problem with the mootness doctrine, of course, it has the notion that could it be repeated? And this record indicates that everything could be repeated because you've gone through five different policies. Right. And it just depends on the regional director then even ignores the agency rulings. I mean, it's so fluid that the interlocutory injunction entered is no longer relevant if it were on that record. But the court never got even open the interlocutory injunction criteria under Winter. Basically, it didn't look at the likelihood of success on the appeal or the fact that the facts have changed or whatever. It basically said, I don't have the power to act because this is a certified union. And as a certified union, I'm out of the loop. Now, if it's correct, seems to me that ends the case. If it's not correct, you can argue the court was not correct. But I don't think that's your position. That is not our position is the court was absolutely correct. And with respect to the you know, what seems to us to be a new challenge that the union would like to bring to the new policy. You know, we're all we're saying is that the circumstances have sufficiently changed such that this appeal should not concern the new policy at all. And, you know, at a minimum, you know, the complaint in district court, if they wanted to bring a complaint would need to be changed. And there might still be jurisdictional hurdles to that new challenge. District court hasn't even looked at the new policy. I mean, that's your man. You're knocking over the straw man. Well, yes. Also, as I understand it. You're you're making two arguments, as I as I see it. Number one, that the district court was correct in the circumstances as they exist right now, that it did not have the power to act because the union was not decertified. And since the union was not decertified, it was under the scheme, the collective bargaining FLRA Court of Appeals scheme that Congress has meticulously set forth. I understand that to be the first argument. And then the second argument is that the 2021 policy changed so significantly from the 2020 policy. And the district court has never had that. Whether you call it mootness or whether it's a remand or whatever. I'm not sure I get to. The appeal seems to me to be moot. Maybe the case is not. You can have the appeal that's moot, but a case not necessarily being so. And I understand that. Do you think that the policies of 2020 and 2021 are sufficiently different that the district court should be able to develop a record and given that? But that whole call it mootness, call it something else. That alternative ground depends upon the union having been decertified. Because if the union has not been decertified, then the district court view that it didn't have the power has to be considered in terms of the district court's ruling and whether it was correct or not, that it was without jurisdiction. So, I mean, I think we've twirled things around a lot, but that's the way I understand your basic position. That is our basic position, Your Honor. And we feel it's necessary to advance both because, of course, it's out of our control when the regional director acts, but it could be a matter of days. Regional directors had this for years or a year and the regional director has not. And now this latest decision seeks to light a fire under the regional director. So, Your Honor, I can only, of course, the FLRA proceedings are not my case and I can only speak to second or third hand knowledge of it. But my understanding is that until very recently, EOIR had not treated the union as a union, had believed the FLRA's decision was final because it had not been stayed. And in the course of separate unfair labor practice proceedings that had been brought by the union, we asserted a lack of standing, saying they are not a union, they can't bring these. And it was the regional director that said until the FLRA acts on the motion for reconsideration, we don't feel that we have the power to do anything. I think the regional director is taking a more aggressive position, basically saying until all appeals and reviews are completed, she's not going to go ahead. And at least that's what I'm interpreting when I read the opinion. And so it could be as we sit here and speculate, it could be that she's going wants to appeal that order and the reconsideration to the circuit court and to the Supreme Court. And that if that's her position, we won't see certification, decertification. Well, Your Honor, I should note that there is not direct review from an FLRA bargaining clarification decision. Now, there are other ways judicial review can be obtained, and I'm certain this would be a question for my colleague. That can't be appealed. That can't be appealed to a court of appeals. Not be appealed directly. That's correct. All right. And so, again, but but more specifically to redirect back to Judge Wilkinson's point. Yes, we have two fundamental points here. One is that the district court was absolutely correct with respect to the facts that existed then and the facts that exist as of this moment. And two, that, you know, the the this appeal should not be changed into a bill, of course, to enjoin a new policy, which was never before any court that could properly develop the factual record. So if I understand your answers to Judge Wilkinson's question, you agree with me that the first issue is a jurisdictional one goes to the power of the court. And this and if we're wrong on that, or if the circumstances change such that the decertification occurs tomorrow morning at seven, then you would want to remand because the preliminary injunction is has to address the new circumstances. Whether you call it a remand or a dismissal as moot for the either way, I think that we could vacate. But the decision was to denial, wasn't it? Correct. So basically, what you would have is an open motion that had been denied for one reason. And if that reason disappears, we'd have to send it back to let the court consider the other reasons raised by the plaintiffs, wouldn't we? Correct. I don't want to get hung up on the word mootness because it seems to me that your alternative argument is a simple remand to let the district judge address circumstances that a trial judge is uniquely empowered to do. There are a whole lot of questions about what this policy does and what it doesn't do and whether it is imposes an unfair burden on the employees or whether it or what what the agency believes are its significant interest at stake in the policy. And a lot of that is factual and a lot of that is something that a trial court is much better able to weigh in the first instance than than we would be. As Judge Niemeyer pointed out, we don't even get to the remand unless the union is decertified and maybe you think it's ministerial. No, I'm not. I'm not prepared to sit here and just assume that the current administration is in the business of decertifying unions in this kind of situation. I just don't know the answer to that. I'm prepared to respect whatever they do. But I don't think it's it's not completely clear to me that this is something that's purely ministerial. It seems to me it's something that involves the scope of bargaining units. And that's always a sensitive question. It doesn't strike me that that's ministerial or that it would be debated in ministerial terms. It strikes me as something that is internally likely to be fairly controversial with a lot of different parties weighing in. So I think we have your argument straight. Yes, Your Honor. It sounds like you do. I believe I'm sorry I'm over my time, but I believe Judge Hytens wanted to ask a question and I don't want to. I'm sorry. I thought I saw your screen light up. Absolutely. Judge Hytens, let's hear your question. As a factual matter, can I assume that the government would promptly let us know if the regional director, in fact, decertified this union? Yes. As a factual matter, I will let you know as soon as I find out. And then second, I guess, does the government agree that if the regional director were to decertify this union, the entire basis of the district court's decision would be called into question because the whole premise was that they have to go through the FLRA process. And if they're decertified, they literally couldn't go through the FLRA process. Yes, Your Honor. I'm not aware of any case law that would support making the type of jurisdictional channeling arguments we've made here if it was an entity that was not a certified union. Got it. Thanks. That's certainly my understanding of it as well. All right. Well, thank you very much. Judge Hytens, do you have any further questions you wish to counsel? I do not. All right. Judge Niemeyer, are you okay with letting the rebuttal come on? I think we ought to hear the rebuttal. All right. Let's hear. Krishan, let's hear you in rebuttal. You have three minutes in rebuttal. Thank you. And I have just a few quick points to make. The first is that, as some of your honors have noted, it would be futile to remand so long as NAJ remains certified. Judge Niemeyer is correct. If the court doesn't reverse on jurisdiction, there's really nothing left in the case, and the district court wouldn't be able to consider any differences between the new policy and the old one. Second, turning to channeling, I just want to note that accepting the government's argument here would mean that one of the Supreme Court's seminal public employee speech cases, NTU, would be wrongly decided. In NTU, the court exercised jurisdiction over a claim virtually identical to the one we raise here, that is, a challenge brought by a union to a prior restraint on federal employee speech. And it did so without once mentioning the possibility of channeling, despite having decided Thunder Basin just one year before. So accepting the government's argument would be inconsistent with NTU. And the D.C. Circuit, in a case called Weaver, apparently agreed. While the court there didn't explicitly apply the framework from Thunder Basin, its analysis essentially maps onto the wholly collateral factor. It exercised jurisdiction over a simple pre-enforcement challenge to a prior restraint on federal employee speech because that... The circuit courts and the Supreme Court have been uniformly skeptical of having a union, for example, a certified bargaining representative, skirt and circumvent this entire process that Congress has set forth. And the other thing is that these kind of questions, I think the part of the reason is that if you're going to change these rules, you can either change the statute, Congress can do that, or you can change the rules via the collective bargaining process. And all of these things that you bring up are subject to bargaining. You may say, no, they're this, or you may put a different nomenclature and say, no, they're not negotiable or they're substantive or they're manageable, but we don't know. And I think that the courts have been skeptical of allowing a union to circumvent the entire scheme that Congress has set forth. Now, if the union's decertified, that's a different matter. So there are two things that distinguish this case from all the cases that Your Honor are opposed to. I know that I just had 10 seconds. Could I just finish responding to Your Honor's comment? Yeah, I'd be happy to have you do so. Thank you. So the first thing that distinguishes this case is the fact that channeling NAJ's prior restraint challenge here would cause irreparable harm. I think this court has noted in cases like Bennett that judicial review is not meaningful if channeling a claim through the administrative review process would cause irreparable harm. And here we have a prior restraint on time-sensitive political speech. So that distinguishes this case from cases like Bennett and Tilton, which the district court relied on, where post-agency judicial review could actually remedy the alleged constitution. Let me just say this. I want to say, first of all, I would appreciate your argument, but that is a very, very broad proposition that you just set forth for the court. Because there are a great many questions involving public employee, federal public employee speech that employ what you would regard as a prior restraint in that certain speeches and the rest have to be run through some sort of supervisory mechanism. And your formulation of it is that this whole concept of supervisory review of federal employee activity, even of a sensitive nature, just should be invalidated by the courts. And I just think you're putting something before us that's quite sweeping when you get right down to it. But anyway, I want to say again, I appreciate your argument. And I appreciate also both of your arguments. And I'm sorry that we can't come down and shake your hands because, but the circumstances of the pandemic prohibit us from doing so, but that doesn't mean we're any less appreciative. And counsel, you seem a little bit perturbed that you haven't been able to get in the last word on me. And so I'm going to let you have the last word. Okay. I'm suddenly not the type. I'm sorry. My resting face can sometimes look a little concerned, but I'm not concerned at all. Thank you for this opportunity. Okay. All right. Thank you both again.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Toby J. Heytens